Robert L. BUSH, Appellant (Plaintiff),

v.

Martin L. DUFF and Maxine E. Duff,
Appellees (Defendants and
Third–Party Plaintiffs),

v.

Francis H. McVAY and Karen A.
McVay, (Third–Party
Defendants).

No. 86–319.

Supreme Court of Wyoming.

April 20, 1988.

Fred W. Phifer, Wheatland, for appellant.

Frank J. Jones, Jones & Weaver, P.C., Wheatland, for appellees.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Justice.

The primary issue presented by this case is whether a way of necessity, created over lands subject to a mortgage by the conveyance of unmortgaged, landlocked adjacent lands by the mortgagor, survives the foreclosure of the mortgage on the servient estate. A corollary issue relates to the authority of the district court to award an easement in lieu of the way of necessity conditioned upon compensation for the lands committed to the easement. A third issue, collateral to the case involving the way of necessity, relates to a redemption from an execution sale of lands previously acquired by the judgment creditor and executed upon by mistake, or, alternatively, the right to recover the money paid to redeem the land. The district court ruled that the way of necessity did not survive the foreclosure of the mortgage on the servient estate; ordered the establishment of an easement upon payment of compensation; and denied a motion by the redemptioner to amend his pleading to assert a claim for monies paid for the land improperly subjected to execution. We hold that the district court correctly ruled that the way of necessity did not survive the foreclosure of the mortgage on the servient estate; the district court lacked authority to impose the easement which it ordered; and the district court did abuse its discre-

tion in refusing to permit the amendment of the redemptioner's pleadings to claim the amount paid to redeem lands not lawfully subject to execution. We affirm in part; reverse in part; and remand this case for further proceedings.

The appellant, Robert L. Bush (Bush), sets forth these issues in his brief:

"1. Was the Appellant entitled to a way of necessity across the property of Appellees without having to purchase an easement as granted by the Court?

"2. Did the Court err in quieting title in Appellees to that portion of the SW¼SE¼ of Section 20, Township 30 North, Range 68 West of the 6th P.M., except the westerly 250 feet thereof, lying easterly of and adjacent to the re-located U.S. Highway 26/87, Platte County, Wyoming?

"3. If the Court did not err in quieting title to the foregoing property in Appellees, did the Court err in not allowing Appellant to amend his Complaint in order to recover the money paid to Appellees for said property on redemption?"

The appellees, Martin L. Duff and Maxine E. Duff (Duffs), restate the issues and articulate them as follows:

"1. Is Appellant entitled to a way of necessity across the property of Appellees?

"2. Was the entry of summary judgment quieting title in favor of Appellees proper?

"3. Did the court err in denying Appellant's motion to amend his complaint?"

On April 23, 1979, the Duffs, as sellers, entered into an Agreement for Warranty Deed with Francis H. McVay and Karen A. McVay (McVays), as purchasers, pursuant to which the Duffs agreed to sell to the McVays approximately 700 acres of agricultural land in Platte County. The transaction was consummated the same day, and the Duffs conveyed the property to the McVays by warranty deed. Simultaneously, the McVays executed and delivered to the Duffs a purchase money mortgage to secure a promissory note given by the McVays to the Duffs, which represented a substantial part of the purchase price.

Three parcels of the property which was sold were not included in the mortgage, and the McVays held clear title to that part of the property. This arrangement satisfied the intent of the McVays and Duffs that the $85,000 cash down payment would provide the McVays with clear title to land having a value of approximately that amount. There also was a clause in the Agreement for warranty Deed which provided that the Duffs would execute partial mortgage releases as payments were received, subject to certain conditions.

All the land is located in Township 30 North, Range 68 West of the 6th P.M., in Platte County. Included in the sale was the SE¼SE¼, and that part of the SW¼SE¼, except the westerly 250 feet thereof lying easterly of and adjacent to U.S. Highway 26 and 87 (now designated as State Highway 319), in Section 20; the E½, SW¼ of Section 21; and the W½W½ of Section 22. The transaction also encompassed lands in Section 28, which are not involved in this case. Of the lands conveyed, that part of the SW¼SE¼ lying east of and adjacent to U.S. Highway 26/87, except the westerly 250 feet thereof, in Section 20; the NE¼NE¼ of Section 21; and the W½W½ of Section 22 were excluded from the mortgage.

Several months after the conveyance by warranty deed and the delivery of the mortgage, the McVays conveyed their unencumbered interest in the NE¼NE¼ of Section 21 by warranty deed to Robert Bush, who is Karen McVay's father. Then, a little more than a year after acquiring the lands, the McVays executed a mortgage in favor of the First Wyoming Bank of Wheatland (Bank) to secure an additional loan. That mortgage included the remaining lands purchased from the Duffs to which the McVays had a clear title. The lands which are involved in this proceeding are shown by the following diagram which depicts the location of the property owned, or the ownership which was disputed, by the parties at the inception of this litigation.

Bush had no access to a public road from his lands, but he did travel across the lands owned by the McVays in Section 21 and Section 20 to State Highway 319.

The McVays failed to make payments when due on their obligations to both the Duffs and the Bank. Foreclosure proceedings were commenced on both mortgages in 1981. After obtaining a judgment of foreclosure against the McVays, the Bank purchased the property subject to its mortgage at the sheriff's sale. After the redemption period, the Bank deeded this property to the Duffs on May 29, 1982. That warranty deed covered that portion of the SW¼SE¼ of Section 20 reflected as the "disputed parcel" on the foregoing diagram.

The Duffs also obtained a judgment of foreclosure against the McVays. At the sheriff's sale which followed the foreclosure of the Duffs' mortgage, they purchased the property. That foreclosure and the subsequent purchase at the sheriff's sale did not include the east thirty acres of the NW¼NE¼ of Section 21, and title to that parcel remained in the McVays. Since the foreclosure sale did not satisfy the amount of the promissory note given to the Duffs, they then obtained a deficiency judgment against the McVays. In 1983, they executed upon that judgment, and the return on the writ of execution showed that the sheriff had levied execution on the east thirty acres of the NW¼NE¼ of Section 21 and that part of the SW¼SE¼ lying easterly of and adjacent to U.S. Highway 26/87, except the westerly 250 feet thereof in Section 20. The return reflected that the Duffs were executing against property which they already owned by virtue of the purchase from the Bank in 1982. The execution proceeded, and the Duffs purchased both of these parcels at the sheriff's execution sale. The McVays then assigned, for value, their rights of redemption in both parcels to Bush who subsequently redeemed them, receiving a certificate of redemption from the Duffs.

Bush's land in Section 21 still remained landlocked. It was necessary that he be able to traverse the Duffs' property in Section 21 to reach Wyoming State Highway 319. The Duffs, however, notified Bush that he no longer could cross their land to reach that highway. The land owned by Bush in Section 21 is bordered on the north and on the west by federal and state lands. Although he would not be required to do so in order to establish an easement by way of necessity, the record does reflect that both Bush and the McVays explored, without success, the possibility of gaining an easement over the lands owned by the federal and state governments.

In an effort to resolve his need for access, Bush filed an action in the district court, seeking in his complaint an easement by way of necessity across the Duffs' land to his property in Section 21. In addition, Bush sought to recover damages for trespass in relation to the parcel in Section 20, alleging that the Duffs had been farming that land. In their answer, the Duffs denied that Bush was entitled to a way of necessity across their property in Section 21, and, by a counterclaim, they requested the court to quiet title in them to the parcel in Section 20.[1]

The district court granted a partial summary judgment to the Duffs which quieted their title to the disputed parcel of land in Section 20. After that, Bush filed a motion to amend his complaint to seek recovery of the money he had paid the Duffs to redeem that parcel from the execution. This motion was denied. After trial on Bush's remaining claims, the district court entered an order granting Bush the easement which he had requested, running from his land southerly along the section line between Sections 21 and 22 to the southeast corner of Section 21 and thence westerly along the section line to State Highway 319, but requiring Bush to compensate the Duffs in the amount of $1,083.84 for this easement. Bush then took this appeal from the judgment and orders.

In support of his initial claim of error, Bush argues that he was entitled to a way of necessity across the Duffs' land without having to purchase an easement. The district court denied the way of necessity but granted, in effect, a private road to Bush. We are satisfied that, under the law, Bush was not entitled to a way of necessity, and we affirm the district court's holding on that question. We conclude, however, that the legislature has assigned the function of establishing private roads to the executive department of government, and the only jurisdiction enjoyed by the judicial department is the review of the decisions of the

---

1. The Duffs filed a third-party complaint against the McVays seeking reformation of the instruments in the transaction between the Duffs and the McVays and alleging that the mortgage given by the Duffs to the McVays was intended to encompass the disputed parcel in Section 20. That third-party action was not resolved, apparently because it was precluded by the McVays' filing of a petition under Chapter 7 of the Federal Bankruptcy Code.

respective boards of county commissioners. Consequently, we must reverse that aspect of the district court's order which granted a private road.

In 3 R. Powell, The Law of Real Property Ch. 34, ¶ 410 at 61–66 (1985), the author explains a common-law way of necessity or, as it is sometimes called, an easement by necessity:

> "A transfer of an interest in land sometimes gives rise to circumstances which justify the implication that an easement must necessarily have been granted or reserved by the grantor. * * * When an owner of land conveys to another an inner portion thereof, which is entirely surrounded by lands owned by the conveyor, or by the conveyor plus strangers, a right of access across the retained land of the conveyor is normally found. * * * Thus, unless a contrary intent is inescapably manifested, the conveyee is found to have a right-of-way across the retained land of the conveyor for ingress to, and egress from, the landlocked parcel."

Such a common-law way of necessity does not constitute a *taking* subject to constitutional restraints found in Art. 1, §§ 32 and 33 of the Constitution of the State of Wyoming [2] because the common law presumes that the grant of ingress and egress from land conveyed by the owner of the servient estate was intended by the parties. *Snell v. Ruppert*, Wyo., 541 P.2d 1042 (1975); 3 R. Powell, The Law of Real Property, supra, Ch. 34, ¶ 410 at 61–68. The rule of the common law is that a way of necessity goes with the land constituting the domi-

nant estate, and no payment of additional compensation is contemplated.

The common-law way of necessity has been recognized in Wyoming jurisprudence for a number of years. *McIlquham v. Anthony Wilkinson Live Stock Company*, 18 Wyo. 53, 104 P. 20 (1909). Sections 24–9–101 through 24–9–103, W.S.1977, afford the owner of a landlocked tract complete relief in a particular style of eminent domain proceeding, but the common-law way of necessity also is available to the owner of a landlocked tract, if it is appropriate. *Snell v. Ruppert*, supra. This proposition was explained in *McGuire v. McGuire*, Wyo., 608 P.2d 1278, 1288 (1980), in which we said with reference to the statutory proceeding:

> " * * * In *McIlquham v. Anthony Wilkinson Live Stock Co.*, 1909, 18 Wyo. 53, 104 P. 20, this court implicitly found that the statute was an alternative remedy and it was not intended to supplant the common-law right of a grantee to a means of access to his land over the lands of his grantor."

See also *Walton v. Dana*, Wyo., 609 P.2d 461 (1980).[3]

The availability of a common-law way of necessity to the owner of a landlocked tract in Wyoming does not solve the problem in this case. We find no prior Wyoming authority which involved the granting of a mortgage; followed by the establishment of a way of necessity over a servient estate consisting of lands previously mortgaged; and followed by the foreclosure of the mortgage. The Duffs position is that the foreclosure of the mortgage extinguished the way of necessity in this instance. We

---

**2.** The Constitution of the State of Wyoming, Art. 1 § 32, provides:

"Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and for reservoirs, drains, flumes or ditches on or across the lands of others for agricultural, mining, milling, domestic or sanitary purposes, nor in any case without due compensation."

The Constitution of the State of Wyoming, Art. 1 § 33, provides:

"Private property shall not be taken or damaged for public or private use without just compensation."

**3.** We cannot explain the comment of the Supreme Court of the United States, with respect to *Snell v. Ruppert*, Wyo., 541 P.2d 1042 (1975), in *Leo Sheep Company v. United States*, 440 U.S. 668, 680, 99 S.Ct. 1403, 1410, 59 L.Ed.2d 677 (1979), to the effect:

"* * * [T]he State of Wyoming no longer recognizes the common-law easement by necessity in cases involving landlocked estates."

This is an incorrect interpretation of *Snell v. Ruppert*, supra, and certainly does not comport with the later decisions of *McGuire v. McGuire*, Wyo., 608 P.2d 1278 (1980), and *Walton v. Dana*, Wyo., 609 P.2d 461 (1980).

conclude that the Duffs' position is correct; the foreclosure prevented the establishment of a way of necessity in this instance.

The general rule is that easements created subsequent to the execution of a mortgage are eradicated by foreclosure of the mortgage. *Kling v. Ghilarducci*, 3 Ill.2d 454, 121 N.Ed.2d 752, 46 A.L.R.2d 1189 (1954); *Camp Clearwater, Inc. v. Plock*, 52 N.J.Super. 583, 146 A.2d 527 (1958), aff'd 59 N.J.Super. 1, 157 A.2d 15 (1959); *Penn Mutual Life Insurance Company v. Nelson*, 170 Or. 248, 132 P.2d 979 (1943). See also 3 R. Powell, The Law of Real Property, supra, Ch. 34, ¶ 426; Annotation, *Foreclosure of Mortgage or Trust Deed as Affecting Easement Claimed in, over, or under Property*, 46 A.L.R.2d 1197 (1956); 47 Cornell Law Quarterly 293 (1962); 25 Am.Jur.2d *Easements and Licenses* § 112 (1966). A mortgagor is not permitted to create an easement in mortgaged land paramount to the rights of the mortgagee. *Kling v. Ghilarducci*, supra; 9 G. Thompson, Commentaries on the Modern Law of Real Property § 4777 (1958 Repl.). In this case, the mortgage to the Duffs antedated the conveyance to Bush, and the easement of necessity did not arise until the severance of the dominant estate from the servient estate by virtue of that conveyance because the law does not recognize an easement in one's own property. *Kling v. Ghilarducci*, supra; 25 Am.Jur.2d *Easements and Licenses*, supra, § 34. The product of these concepts is that to protect the interest of the mortgagee, upon foreclosure of a mortgage and after the redemption period, title to the mortgaged property vests in the purchaser at the foreclosure sale and relates back to the date of the mortgage, extinguishing intervening rights and claims. *Kling v. Ghilarducci*, supra; 59 C.J.S. *Mortgages* § 520 at 850 (1949).

The application of this rule to extinguish the after-acquired easement does require, however, that the holder of the easement be joined as a party to the foreclosure if the mortgagee has actual or constructive knowledge of the easement. *Camp Clearwater, Inc. v. Plock*, supra.

The rule is expressed in this way by the Illinois Supreme Court:

"On foreclosure by suit in equity, the mortgagee should search for intervening transfers or liens and should join the *record owners* as parties defendant, praying foreclosure against them. But when this is done, subsequent grantees and junior encumbrancers are cut off as effectively as one would desire, for the purchaser at the foreclosure sale acquires the title as it stood at the date of the mortgage." (Emphasis added.) *Kling v. Ghilarducci*, supra, 121 N.Ed.2d at 757.

Bush was not joined in the foreclosure action by the Duffs. His easement, the common-law way of necessity, was an interest created by implication, however, and was not a matter of record so as to furnish constructive knowledge to the Duffs. Nor does the record disclose that the Duffs had actual knowledge of Bush's easement at the time of the foreclosure action. In these circumstances, the foreclosure does have the effect of extinguishing the easement. The Supreme Court of Oregon, in a case involving similar facts, said:

"* * * If [grantee] became entitled to a way of necessity over the mortgaged premises when the defendants conveyed to her the west parcel, such easement was cut off by the decree in the foreclosure proceedings. She was not made a party defendant but that was not necessary since the plaintiff had no notice, either actual or constructive, of any claim of easement on her part. 42 C.J., *Mortgages*, 167 § 1777." *Penn Mutual Life Insurance Company v. Nelson*, supra, 132 P.2d at 981.

We conclude that the common-law way of necessity did not exist in favor of Bush over the Duffs' lands. The sequence of mortgage, conveyance of the landlocked parcel and foreclosure resulted in the foreclosure of his common-law way of necessity.

Having recognized the efficacy of the foregoing principles, the district court attempted to solve the problem by creating an easement in favor of Bush but requiring

him to pay compensation. The court, in effect, invoked the statutory procedure for the establishment of private roads. Sections 24–9–101 through 24–9–103, W.S. 1977. The statute, however, grants the power and authority to establish a private road to the county commissioners in the respective counties.[4] Those proceedings are administrative in nature and a function of the executive department of government. *McGuire v. McGuire,* supra. The court usurped the function of the executive department of government, the county commissioners, in contravention of the separation of powers mandated by Art. 2, § 1 of the Constitution of the State of Wyoming. The district court did not have subject matter jurisdiction to create the easement under these circumstances. We must reverse the Order Granting Easement.

We turn then to the summary judgment by which the trial court quieted title in the Duffs to "that part of the SW¼SE¼, lying east of and adjacent to U.S. Highway 26/87, except the westerly 250 feet thereof" in Section 20. Bush urges that the district court should not have quieted title to this disputed parcel in the Duffs. If the judgment is sustained, however, Bush contends that he was entitled to have his motion to amend his complaint granted to seek recovery of the money he paid to redeem that land from the execution sale.

The summary judgment was appropriate in this instance according to our rules by which we review a summary judgment. The Duffs have assumed their burden of establishing the absence of a genuine issue of material fact; the undisputed facts are clear. The material facts are those which, if proved, operate to establish or refute an essential element of a cause of action or intent asserted by the parties. *Samuel Mares Post No. 8, American Legion, Department of Wyoming v. Board of Coun-*

*ty Commissioners of Converse County,* Wyo., 697 P.2d 1040 (1985); *Schepps v. Howe,* Wyo., 665 P.2d 504 (1983); *Johnson v. Soulis,* Wyo., 542 P.2d 867 (1975). We have reviewed the entire record in the light most favorable to Bush and have given him all favorable inferences which may be drawn from the facts. *White v. L.L. Smith Trucking,* Wyo., 742 P.2d 1286 (1987); *Schepps v. Howe,* supra. *Samuel Mares Post No. 8, American Legion, Department of Wyoming v. Board of County Commissioners of Converse County,* supra. In this instance, there exists no genuine issue of material fact, and the Duffs were entitled to judgment as a matter of law. Rule 56(c), W.R.C.P.; *Bettencourt v. Pride Well Service, Inc.,* Wyo., 735 P.2d 722 (1987).

With respect to the title to the parcel in Section 20, this record does not disclose a factual dispute. The Bank had a mortgage, and this tract was included in the mortgage which the Bank foreclosed. The Duffs received a valid warranty deed to this tract from the Bank after the Bank had purchased at the foreclosure sale. The warranty deed from the Bank to the Duffs is a matter of record in the office of the county clerk. It is equally clear that the Duffs levied execution on this parcel of land in endeavoring to satisfy their deficiency judgment against the McVays. The record also discloses that the parcel was offered at the execution sale; the Duffs purchased it; and Bush, after receiving an assignment of the right of redemption from the McVays, redeemed the parcel of land from the execution sale. At that time, Bush received a certificate of redemption from the Duffs which had been prepared by the Duffs' attorney. Since there is no dispute about any issue of material fact, the question with respect to the validity of

---

**4.** Section 24–9–101 provides, in pertinent part:
   "Any person whose land has no outlet to, nor connection with a public road, may apply in writing to the board of county commissioners of his county for a private road * * *."
   Section 24–9–103 then provides, in pertinent part:
   "The viewers and appraisers so appointed * * * shall make a report to the county com-

missioners * * * and if the commissioners are satisfied that such report is just, and after payment by the applicant of all costs of locating such road, and the damages assessed by the viewers, the commissioners shall order such report to be confirmed and declare such road to be a private road, and the same shall be recorded as such."

the summary judgment becomes one of law. Given these facts, the Duffs were entitled to have title quieted in them under the law, and we are in accord with the trial court.

Execution may be pursued in three ways in Wyoming. Section 1–17–101, W.S.1977. In this instance, the Duffs proceeded, as described in § 1–17–101(b)(i), W.S.1977, "[a]gainst the *property of the judgment debtor,* including orders of sale." (Emphasis added.) The statute does not authorize execution against a property in which the judgment debtor has no interest. If the circumstances disclose that the judgment debtor is not the owner of the property sold, the sale upon execution is void, and the purchaser acquires no title as a result of the sale. 30 Am.Jur.2d *Executions* § 103 (1967). The rule as stated in 5B G. Thompson, Commentaries on the Modern Law of Real Property § 2756 at 466 (1978 Repl.) is that: "The purchaser at an execution sale acquires such title as the judgment defendant had, and no more."

The hypothesis described in the above rule is the fact in this case. The peculiar facts disclose that the Duffs had a prior valid title to the disputed tract which, like the title of any other stranger, would not be affected by the void execution sale. The sheriff levied upon and sold property which the McVays did not own. The execution sale was void, and the Duffs acquired no title as a result of that sale.

The statutory right of redemption in Wyoming as found in § 1–18–103, W.S.1977, does not adjust the foregoing conclusion. The general provisions found in § 1–18–103(a), as modified with respect to agricultural land in subparagraphs (b) and (c),[5] provide in pertinent part:

" * * * [I]t is lawful for any person, his heirs, executors, administrators, assigns or guarantors *whose real property* has been sold by virtue of an execution * * * to redeem the real estate by paying to the purchaser * * * the amount of the purchase price or the amount given or

bid if purchased by the execution creditor * * *." (Emphasis added.)

It is clear that the McVays had no interest in this parcel of land, and the statutory language would not afford to them, or to Bush as their assignee, any right of redemption. Even if this were not true, Bush could succeed only to the interest of the Duffs obtained at the execution sale. 5B Powell, The Law of Real Property, supra, § 2756 at 471. The Duffs, as already noted, acquired no interest as purchasers at the execution sale, and, consequently, Bush acquired no interest by exercising a nonexistent right of redemption.

The net effect of this mistake in levying execution on the disputed parcel, in this case, is a nullity. The Duffs acquired nothing, and Bush redeemed nothing. The Duffs had title to this parcel by virtue of the prior recorded warranty deed from the Bank. Their ownership interest was not affected by the execution proceeding, and we hold that, as a matter of law, the entry of partial summary judgment by the district court which quieted title in this disputed parcel in Section 20 in the Duffs was correct.

Bush contends, however, that, if the district court correctly quieted title to the parcel in Section 20 in the Duffs, then the court should have permitted Bush to amend his complaint to seek a refund of a proportionate amount of the redemption payment. We agree with Bush's contention. Rule 15(a), W.R.C.P., provides, in pertinent part, that, after a responsive pleading has been served, a party may amend his pleading only by leave of court or by written consent of the adverse party. The rule goes on to provide that leave to amend shall be freely given when justice so requires. The allowance or disallowance of an amended complaint is within the sound discretion of the district court and can be reversed on appeal only when an abuse of discretion is perceived. *Robertson v. TWP, Inc.,* Wyo., 656 P.2d 547 (1983); *Johnson v. Aetna Casualty and Surety Company of*

---

**5.** The amendment to § 1–18–103(b), W.S.1977 (1986 Cum.Supp.), which extended the period of redemption for agricultural real estate from

nine months to twelve months has no impact on any issue in this case.

*Hartford, Connecticut,* Wyo., 608 P.2d 1299 (1980), cert. denied 454 U.S. 1118, 102 S.Ct. 961, 71 L.Ed.2d 105 (1981), reh. denied 455 U.S. 1039, 102 S.Ct. 1743, 72 L.Ed.2d 157 (1982). It is an abuse of discretion to refuse to permit the amendment of a complaint which should be allowed in the furtherance of justice. Cases cited in 71 C.J.S. *Pleading* § 281 (1951).

In levying execution on behalf of the Duffs to satisfy their deficiency judgment against the McVays, the sheriff sold two parcels of land, the parcel in Section 20 and the east thirty acres of the NW¼NE¼ of Section 21. Bush paid $4,603.13 to the Duffs to redeem both parcels, as shown by the certificate of redemption which the Duffs' counsel prepared. As we have noted, Bush did not obtain any right to the parcel in Section 20, but the record does not disclose how the values were apportioned between the two parcels of land. We do know that Bush paid something to redeem the land as to which he had no right of redemption and to which the court subsequently quieted title in the Duffs. Under the circumstances, to refuse to permit the complaint to be amended so that Bush could claim the amount paid for the parcel which he did not receive constitutes an abuse of discretion. Bush is entitled to recover that portion of his payment properly allocated to the parcel in Section 20. "The purchaser at an execution sale may not have the redemption of property set aside in equity on the ground of fraud while still retaining the redemption mon-

ey." 30 Am.Jur.2d *Execution* § 548 at 757 (1967), and cases cited therein. In this instance, the redemption was set aside on the ground of a mistaken execution rather than fraud, but the rule should apply with equal or greater force. We hold that Bush's motion to amend his complaint should have been granted in the furtherance of justice, and its denial was an abuse of discretion. The Order which denied Bush's motion to amend his complaint must be reversed.

To summarize, we reverse the Order of the district court which granted Bush an easement, leaving to Bush the opportunity to pursue his remedy before the county commissioners. We affirm the summary judgment quieting title in the parcel of land in Section 20 in the Duffs. We reverse the Order of the district court denying Bush's motion to amend his complaint, and we remand the case for a determination by appropriate proceedings of the proportionate amount paid to redeem the parcel of land in Section 20 and the entry of judgment in favor of Bush in that amount.

Affirmed in part, reversed in part and remanded for further proceedings in accordance with this opinion.